IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| LOREN ANDREW WILLCOCK | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-16-4020 |
| MY GOODNESS GAMES, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Between 2008 and 2012, Plaintiff Loren Andrew Willcock, a citizen of Maryland, entered into three separate franchise agreements with Games2U Franchising, LLC ("Games2U"), a mobile entertainment company, to operate franchises in Maryland and Virginia. Jt. Stip. Facts ¶¶ 5–7, ECF No. 27-3; Franchise Agreements, Jt. Exs. 1–3, ECF Nos. 27-5 to -7 [hereinafter Agrs.]. At some point during the business relationship, Defendant My Goodness! Games, Inc., a Delaware corporation with its principal place of business in Austin, Texas, acquired Games2U.[1] Jt. Stip. Facts ¶¶ 1–2. The Franchise Agreements are identical in all relevant respects apart from their geographic scopes. *Id.* ¶ 8. In September 2016, both Willcock and Games2U declared the Franchise Agreements terminated, each party accusing the other of material breaches. *Id.* ¶¶ 9–11. Willcock filed suit in the Circuit Court for Calvert County, Md. *Id.* ¶ 13; Calvert Cty. Compl., *Willcock v. My Goodness Games, Inc.*, No. 04C16001189 (Cir. Ct. Clavert Cty., Md.

---

[1] As the Defendant continues to do business under the name Games2U, I will refer to it as such throughout. Jt. Stip. Facts ¶ 1.

Oct. 28, 2016), Jt. Ex. 5, ECF No. 27-9. Before being served in the Calvert County action, Games2U filed a Demand for Arbitration against Willcock with the American Arbitration Association ("AAA") in Austin, Texas and also filed suit in the United States District Court for the Western District of Texas. *Id.* ¶ 14; Demand for Arbitration, Jt. Ex. 6, ECF No. 27-10; Tex. Verified Compl., *My Goodness! Games, Inc. v. Willcock*, No. 1:16-cv-1213 (W.D. Tex. Nov. 9, 2016), Jt. Ex. 8, ECF No. 27-12. After being served in the Calvert County action, Games2U removed the case to this Court. Notice of Removal, ECF No. 1. With the Parties' consent, the Western District of Texas transferred the case to this Court, where the two actions were consolidated. Feb. 3, 2017 Order, ECF No. 21. Two related motions are now pending before the Court. Games2U has filed a Motion to Compel Arbitration, ECF No. 27, while Willcock has filed a Motion to Stay Arbitration, ECF No. 29. The Motions are fully briefed, Def.'s Mem., ECF No. 27; Pl.'s Opp'n, ECF No. 28; Def.'s Reply, ECF No. 32, and no hearing is necessary, Loc. R. 105.6 (D. Md.).[2] With the Parties' consent, I stayed the AAA arbitration while reviewing and ruling on the Motions. Consent Order Staying Arb., ECF No. 26. Because I find that the Franchise Agreements unmistakably delegate resolution of the gateway question of whether the disputes between the two Parties are subject to arbitration, I will stay the action pending a decision by the arbitrator on the arbitrability of the claims.

**Standard of Review**

Pursuant to the Federal Arbitration Act (FAA), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute permits a party to an arbitration agreement to bring a motion in federal district court to compel arbitration and stay the

---

[2] As the Motions are essentially two sides of the same coin, briefing on Games2U's Motion to Compel Arbitration applies with equal force to Willcock's Motion to Stay Arbitration.

2

proceeding pending resolution of the arbitration. *Id.* §§ 3–4. In reviewing a motion to compel arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (quoting *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997)). This inquiry involves two steps: "First, we determine who decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012).

## Discussion

Each of the Franchise Agreements in this case contains an arbitration agreement requiring the parties to arbitrate, among other things, "all controversies, disputes or claims . . . arising out of or related to:

20.6.1 Franchisee's operation of the Franchised Business;

20.6.2 this agreement or any other agreement between the parties or any provision of such agreements;

20.6.3 the relationship of the parties hereto;

20.6.4 the validity of the Agreement or any of the agreements between the parties or any provision of such agreements . . .

and "any claim which would constitute a compulsory counterclaim . . . ." Agrs. § 20.6. But the Agreements also contain riders setting forth modifications required by Maryland law. Among those modifications, the rider provides that "[p]ursuant to Section 14-216(c)(25) of the Maryland Franchise Registration and Disclosure Law, a franchisee is permitted to enter into litigation with

3

a Franchisor in the State of Maryland regardless of the language in the Franchise Agreement." Maryland Rider ¶ 5, Franchise Agreements. Although Willcock does not dispute that the arbitration agreement requires some disputes between him and Games2U to be arbitrated, he contends that the Maryland Rider creates a carveout that allows judicial review of all Maryland disputes. Pl.'s Opp'n 8–9 ("If there is no Maryland litigation, the parties arbitrate. If there is Maryland litigation, the parties litigate claims in a Maryland court instead of arbitrating the dispute."). Games2U, by contrast, interprets the Maryland Rider to provide only a narrow carveout for claims for relief under the Maryland Franchise Registration and Disclosure Law and not common-law claims such as the contract claims that each party asserts against the other in this case. Def.'s Mem. 12.

Thus, although the parties do not contest that a valid and enforceable arbitration agreement exists that applies to some claims that might arise between them, they disagree about whether the present dispute must be arbitrated. This raises the subsidiary question of whether it is for the Court or an arbitrator to determine whether the Parties' dispute must be arbitrated. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). But "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Texas law governs the Franchise Agreements in this case. Agrs. § 20.7.

The Franchise Agreements incorporate by reference the AAA's Rules. Agrs. § 20.6. Those Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rule, R-7(a) (2013), *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf. Games2U, relying on Texas Court of Appeals authority (and Fifth Circuit synthesis of the same),[3] argues that this incorporation constitutes unmistakable evidence that the parties agreed to arbitrate arbitrability questions. Def.'s Mem. 8; *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[E]xpress adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App. 2017) (same); *Jody James Farms, JB v. The Altman Grp., Inc.*, 506 S.W.3d 595, 600 (Tex. App. 2016) (applying "majority view" that "incorporation of the AAA rules constitutes clear and unmistakable evidence the parties to the policy intended the arbitrator to decide" questions of arbitrability); *Schulmberger Tech. Corp. v. Baker Hughes, Inc.*, 355 S.W.3d 791, 803 (Tex. App. 2011) (holding that incorporation of AAA rules constitute unmistakable evidence of the parties' intent to allow the arbitrator to decide arbitrability questions absent "provisions in the [arbitration agreement] that negate the arbitrator's power under AAA Rule 7(a) to determine the arbitrability of a defense raised in arbitration").

Willcock argues that *Luchese Boot Co. v. Salano*, 473 S.W.3d 404 (Tex. App. 2015) sets forth the governing law in Texas on whether incorporation of the AAA rules defeats the

---

[3] Games2U acknowledges that the Supreme Court of Texas has not ruled on whether incorporation of the AAA rules constitutes an unmistakable delegation of questions of arbitrability to an arbitrator. Def.'s Reply 3.

presumption that courts decide questions of arbitrability. Pl.'s Opp'n 4–5. The *Luchese Boot* court disagreed with the Fifth Circuit's position in *Petrofac* and held that "[i]ncorporation of an arbitration organization's rules is one factor to consider in determining the parties' intent, but it is by no means dispositive." 473 S.W.3d at 413 n.3. Because the arbitration agreement at issue in that case was a narrow one, pertaining only to "a certain class of 'Covered Disputes,' " and also specified "a large class of 'Claims Not Covered,' " the court found the agreement's incorporation of a rule analogous to AAA Rule 7(a) "not dispositive" and that the agreement's "substantive restraints on the arbitrator's power" meant "that the trial court retained power to decide gateway questions absent clear, explicit evidence to the contrary." *Id.* at 413–14. Games2U also acknowledges other contrary Texas Court of Appeals authority in *Haddock v. Quinn*, 287 S.W.3d 158 (Tex. App. 2009). Def.'s Reply 7. But the *Haddock* court's holding that incorporation of the Rules was non-dispositive stemmed from the fact that the AAA had not adopted Rule 7(a) at the time that the contracting parties entered into the arbitration agreement. *Haddock*, 287 S.W.3d at 175.

It appears that *Luchese Boot* was an outlier among the various Texas Court of Appeals panels, and subsequent panels have not followed its reasoning. *See Gilbert*, 2017 WL 710702, at *4; *Jody James Farms*, 506 S.W.3d at 600. In addition, as recognized by the court in *Jody James Farms*, "[f]ederal courts are largely in agreement that incorporation of the AAA rules . . . constitutes clear and unmistakable evidence that the parties to the arbitration agreement 'agreed to arbitrate arbitrability' " 506 S.W.3d at 599 (quoting *Oracle Am., Inc. v. Myriad Group, A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)); *see also, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) *Petrofac*, 687 F.3d at 675; *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372 (Fed. Cir. 2006); *Terminix*

*Int'l Co., LO v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol., Co.*, 389 F.3d 205, 208 (2d Cir. 2005). And, in any event, in this case, the Franchise Agreements' arbitration clause is much broader the narrow one in *Luchese Boot* that led the court to distinguish from other cases where the court had deemed incorporation of AAA Rules to delegate questions of arbtribility. Whereas the agreement in *Luchese Boot* enumerated a restricted set of cases subject to arbitration and a broader range of cases subject to litigation, 473 S.W.3d at 413–14, the Franchise Agreements' arbitration clause at issue here applies to "all controversies, disputes or claims . . . arising out of or related to" the Agreements, except for a subset of Maryland disputes. Agrs. § 20.6. The Supreme Court of Texas has characterized similar arbitration agreements as broad. *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 268 (2008). So even under *Luchese Boot*, the broad language of the arbitration agreement, coupled with its incorporation of the AAA Rules, defeats the presumption in favor of courts determining questions of arbitrability.

Accordingly, I conclude that that Franchise Agreements contain unmistakable evidence that the parties intended questions of arbitrability to be determined by an arbitrator rather than the Court and will therefore stay these proceedings until such time as the arbitrator determines whether any of the Parties' claims are properly before this Court.

**ORDER**

Accordingly, for the reasons stated, it is this 12th day of June, 2017, hereby ORDERED that:

1. Defendant's Motion to Compel Arbitration, ECF No. 27, IS GRANTED;

2. Plaintiff's Motion for Permanent Stay of Arbitration, ECF No. 29, IS DENIED;

3. This action IS STAYED pending a ruling from the arbitrator as to whether any of the Parties' claims may be litigated in this Court;

4. The Consent Order Staying Arbitration, ECF No. 26, is hereby LIFTED;

5. The preliminary injunction issued by the United States District Court for the Western District of Texas, ECF No. 27-14, shall remain in full force and effect pending further order in connection with the arbitration.

/S/
Paul W. Grimm
United States District Judge

jlb